Jeffery A. Sutton            #14186
Sutton Law Office, L.L.C.
1106 North 155th Street
Basehor, Kansas 66007
(913) 724-3003
(913) 724-3005 – Fax
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

TYLER SELF, ROBERT SELF and
PAMILA SELF,
                               **Plaintiffs**

                                        **DEMAND FOR JURY TRIAL**
vs.                                     **CASE NO.:** <u>13-CV-2487</u>

**LANSING UNIFIED SCHOOL
DISTRICT NO. 469 and JOHN PRETZ,**
                                **Defendants**

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT LANSING U.S.D. 469'S
MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW Plaintiffs, by and through their attorney of record, and responds to the Defendant Lansing's Motion for Summary Judgment.

    I.      <u>**RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**</u>

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Denied. Mr. Pretz called him pepperoni face and ugly on multiple occasions such that Tyler Self's classmates started calling him the same thing. (Tyler Self depo 71:73:1)

40. Admitted.

41. Denied. Tyler Self remembers that most of his classmates started calling him these names. (Tyler Self depo 71:73:1)

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Denied. The book hit him in the head., which slammed his head into the pencil. (Tyler Self depo 67:16-20)

48. Admitted.

49. Denied. He developed a black eye and his face was reddened and swollen. (Tyler Self depo 107:12-15, 162:16-23.)

50. Admitted.

51. Admitted.

52. Admitted.

53. Denied. Tyler Self was physically battered repeatedly, typically by being knocked in the head from someone throwing a book at him by his fellow students for much of the time he was in Mr. Pretz's class. One of the incidents caused him to sustain a black eye. It cannot be said that each instance of when he was hit in the head with a book was not a physical injury. (Tyler Self depo 62:20-63:10; 27:81-34:21)

54. Denied. Tyler Self was physically battered repeatedly, typically by being knocked in the head from someone throwing a book at him by his fellow students for much of the time he was in Mr. Pretz's class. One of the incidents caused him to sustain a black eye. It cannot be said that each instance of when he was hit in the head with a book was not a physical injury. (Tyler Self depo 62:20-63:10; 27:81-34:21)

55. Admitted.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted.

69. Admitted.

70. Admitted.

71. Admitted.

72. Admitted.

73. Admitted.

74. Admitted.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Admitted.

80. Admitted.

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted.

85. Admitted.

86. Admitted.

87. Admitted.

88. Admitted.

89. Admitted.

90. Admitted.

91. Admitted.

92. Admitted.

93. Admitted.

94. Admitted.

95. Admitted.

96. Admitted.

97. Admitted.

98. Admitted.

99. Admitted.

100. Admitted.

101. Admitted.

102. Admitted.

103. Admitted.

104. Admitted.

105. Admitted.

106. Admitted.

107. Adimtted.

108. Admitted.

109. Admitted.

110. Admitted.

111. Admitted.

112. Admitted.

113. Admitted.

114. Admitted.

115. Admitted.

116. Admitted.

117. Admitted.

118. Admitted.

119. Admitted.

120. Admitted.

121. Admitted.

122. Admitted.

123. Admitted.

124. Admitted.

125. Admitted.

126. Admitted.

127. Admitted.

128. Admitted.

Any and all other allegations not herein addressed are deemed to have been denied by the Plaintiffs.

## ADDITIONAL STATEMENTS OF FACT

129. On February 19, 2013, the Plaintiff's served a proof of claim, as required by K.S.A. 12-105b, on the Clerk of Lansing USD 469, the superintendent of schools and the board of education president, for filing. (See Exhibit A.)

130. Jeremy Sisco, who was one of the students who attacked Tyler Self, was considered mean, was feared by his fellow students, was considered a bully and had

physically punched another student and knocked him out of his shoes. (Tyler Self depo 98:1-101:16)

131. Pretz was present in the classroom and observed Tyler Self being abused by fellow students and viewed one of the three videoed incidents. (Tyler Self depo 55:6-59:22; 62:9-63:15)

132. Tyler Self was physically battered repeatedly, typically by being knocked in the head from someone throwing a book at him by his fellow students for much of the time he was in Mr. Pretz's class. One of the incidents caused him to sustain a black eye. It cannot be said that each instance of when he was hit in the head with a book was not a physical injury. (Tyler Self depo 62:20-63:10; 27:81-34:21)

## ARGUMENTS

### A. TITLE IX CLAIM

The Plaintiff's concede to the dismissal of this claim.

### B. 42 U.S.C. § 1983

The Plaintiff's concede to the dismissal of this claim.

### C. NEGLIGENT SUPERVISION

Although the Court is well versed on the relevant standards, "[T]he summary judgment movant bears the initial burden of pointing out those portions of the record that show it entitled to judgment as a matter of law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), cert. denied, 506 U.S. 1013, 113 S. Ct. 635, 121 L. Ed. 2d 566 (1992).

   1. **Compliance with K.S.A. 12-105b.**

      i. **Proof of Claim**

The Defendant first asserts that the Plaintiff's have failed to comply with the requirements of K.S.A. 12-105. This action includes a claim covered by the Kansas Tort Claims Act for negligence against the named Defendant's. The Defendant's reliance on the correspondence from March 7th, 2011 is misplaced. On February 19, 2013, the Plaintiff's served a proof of claim, as required by K.S.A. 12-105b, on the Clerk of Lansing USD 469, the superintendent of schools and the board of education president, for filing. (Statement of Facts ("SOF") ¶ 129.)

Plaintiffs contend the Defendant's received the proof of claim. Pattern Instructions for Kansas sets forth the status of law in Kansas with respect to the Mailbox Rule. PIK provides that "[I]f mail was properly addressed, stamped, and deposited in the United States mails, you must presume that it was delivered to the addressee unless you are persuaded by the evidence that it was not delivered." PIK Civ. 4th 102.74. See also *Breedlove v. Gen. Baking Co.*, 138 Kan. 143, 144, 23 P.2d 482, 483 (1933). Plaintiffs submit that they have adduced facts sufficient to establish, as a matter of law, that the Proof of Claim was properly served by mail on the Defendants.

### ii. Statute of Limitations.

In relation to the service and filing of documents pursuant to Kansas statutes, including K.S.A. 12-105b, K.S.A. 60-206 provides as follows: "Computing time. The following provisions apply in computing any time period specified in this chapter, in any local rule or court order or in any statute or administrative rule or regulation that does not specify a method of computing time" and that "Additional time after certain kinds of service. When a party may or must act within a specified time after service and service is made under subsections (b)(2)(C) ..... of K.S.A. 60-205 ..... three days are added after

the period would otherwise expire under subsection (a). Subsection (b)(2)(C) of K.S.A. 60-205 covers service by mail.

K.S.A. 12-105b provides that "Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period."

As noted above, the proof of claim was served upon the clerk for the school board for filing. According to K.S.A. 60-206, since the Notice was served on the clerk by U.S. mail, three days is added to the time for the district to investigate the claim. Therefore the Claim was deemed denied on June 22nd, 2013.

In relation to the filing of a tort claim, K.S.A. 12-105b provides "Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action.

In *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75 (2009), is was noted that "[U]nder K.S.A. 2008 Supp. 12-105b (d), **the statute of limitations is tolled** for up to 90 days following the municipality's denial of a claim or the expiration of the 120-day notice period to allow the claimant to commence a civil action." (Emphases added.) The 90 day filing period expired on September 19, 2013, which is the date this action was commenced by the filing of the complaint.

Plaintiff has established that there exist facts concerning this issue to conclude the filing of this action was timely and the Defendant's Motion on this issue should be denied.

### iii. Adverse Inference.

The Defendant has an ongoing responsibility to preserve any proof of claim it receives in a matter like this. The Defendant's always possess the only definitive evidence establishing with certainty when a proof of claim was filed. By the very nature of the document, it cannot be asserted, absent settling the claim, that there is ever a time when the prospect of litigation is present. The foundation of K.S.A. 12-105b is to afford a school district the ability to investigate a claim without prematurely being pulled into litigation. The Defendant's received the proof of claim, but presently before the Court is the Defendant's Motion based upon the notion that the Plaintiff did not meet its burden in serving the proof of claim in the beginning of this matter. Surely, the Defendant's do not have the February 2013 proof of claim, given all of the eyes that have reviewed the file s for the Defendant's. It would be tantamount to a fraud on the Court for the Defendant's to make the argument that has been made and then the proof of claim materializes.

In *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv.*, 1998 U.S. App. LEXIS 2739, 1998 Colo. J. C.A.R. 912 (10th Cir. Okla.1998), the Tenth Circuit Court of Appeals discussed when sanctions may be appropriate to redress the spoliation of evidence. The Court discussed the issue as follows:

> "[I]n *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997), we considered 'the evidentiary doctrine of spoliation," and stated, as a general rule, that the 'bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." Id. at 1407 (citing Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th

Cir. 1985)). We also stated that, because only the bad faith loss or destruction of a document will "support an inference of consciousness of a weak case," no adverse inference should arise from spoliation that is merely negligent. Id. (citing Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)). (Internal citation omitted.)

Courts have not generally imposed a similar requirement of bad faith when considering other sanctions for the spoliation of evidence, however. See, e.g., Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806-07 (7th Cir. 1995) (upholding dismissal of claims as sanction for spoliation, even in absence of bad faith on part of despoiler); Dillon, 986 F.2d at 267-69 (upholding exclusion of evidence as sanction for spoliation, even in absence of bad faith on part of despoiler); Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368-69 (9th Cir. 1992) (same).

When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: 1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party. See, e.g., Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 [14] (3d Cir. 1994); Dillon, 986 F.2d at 267-68; Vazquez Corales v. Sea-Land Serv., Inc., 172 F.R.D. 10, 13-14 (D. P.R. 1997) (collecting cases). The bulk of Miller's arguments on appeal concern the first factor: his culpability, or lack thereof." *Id* at 12-15.

The Court also considered that "a court should impose the least onerous sanction that will remedy the prejudice and, where applicable, [21] punish the past wrongdoing and deter future wrongdoing. See id. at 190; see, e.g., Schmid, 13 F.3d at 78." *Supra* at 20-21.

Plaintiffs assert that the least onerous sanction available would be to dismiss the Defendant's motion for summary judgment, which will remedy the prejudice experienced here because it the Defendant's failure to protect the proof of claim.

### 2. Negligent Failure to Supervise

"Kansas courts have certainly indicated that a school owes students a duty to properly supervise school personnel and other students under certain circumstances. All

of those cases, however, have involved physical, bodily harm to the student." *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 968-70 (D. Kan. 2005)

In *Beshears by & Through Reiman v. Unified Sch. Dist. No. 305*, 261 Kan. 555, 563, 930 P.2d 1376, 1383 (1997), the Kansas Supreme Court observed that "USD 305 readily acknowledges a special relationship and duty to supervise Jester and Beshears during the school day. In fact, as Beshears points out, USD 305 stated in its motion for judgment on the pleadings that it "is liable for students' injuries which were proximately caused by the district's failure to exercise reasonable care under the circumstances." However, USD 305 argues that such a special relationship does not exist off campus, especially with high school students old enough to drive. We agree."

In *Theno*, the court went on to explain that "[P]erhaps the most colorable basis for plaintiff's claim is Restatement § 320. This provision recognizes that a person who has custody of another "is under a duty to exercise reasonable care so as to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm" under certain circumstances. "Harm" in the context of Restatement § 320 undoubtedly refers to physical harm, but it could also arguably mean a duty to prevent emotional harm. Although the court has considered this possible interpretation, it finds it to be unsupported by any authority. The comments to this section of the Restatement as well as the related case citations indicate a duty to prevent foreseeable physical harm, **not purely emotional harm.**" *Supra* at 969. (Emphasis added.) This creates a question of fact concerning the Plaintiff's injuries.

The District reveals that during the 08-09 and 09-10 school years, the District maintained a bullying policy. (SOF ¶ 110) The District provides anti-bullying instruction and guidance to its staff and teachers (SOF ¶ 112, 114, 119, 120 and 121.) The only guidance provided to student during the years Tyler Self attended school there was for a single presentation on bullying prevention (SOF ¶ 116) and it emphasized a monthly character word (SOF ¶122).

Unfortunately, the "Bullying Plan" is nothing more than a regurgitation of K.S.A. 72-8256 as amended in 2007 and provides no real guidance or instruction for students in the identification, prevention or reporting of bullying behavior, firstly to teachers/staff, but most importantly, to students.

As Restatement § 320 provides that the district has a duty to exercise reasonable care so as to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm. The lack of any education or training for students created an atmosphere that was unreasonably dangerous and abusive to Tyler Self, which amounted to a violation of the district's duty. Tyler Self experienced physical and emotional harm as a result of the abuse he endured.

Plaintiff has established that there exist facts concerning to establish a question for a jury and the Defendant's Motion on this issue should be denied.

### 3. Discretionary Function Immunity

The Defendant asserts that discretionary function immunity attaches to preclude the plaintiff's claim. In *Patterson v. City of Wichita*, 2014 U.S. Dist. LEXIS 76664, 2014 WL 2533180(D. Kan. June 5, 2014), it was held that the Defendant "in Price held

that defendants failed to show that the discretionary function exception applied as a matter of law.48 Likewise, in *Clark v. Thomas*, the court noted that the officer's conduct cannot be said to have been "discretionary" for purposes of K.S.A. § 75-6104(e) where guidelines are in place governing the conduct and the discretionary function must involve some element of policy formation. The discretionary function exception does not shield "'a law enforcement officer who uses an unreasonable amount of force or acts maliciously or wantonly'" during an arrest. There is testimony from Tyler Self the Mr. Pretz knew about the physical abuse he was receiving and did nothing about it. (SOF 131, 132.)

### 4. Personnel Policy Immunity

Here the Defendant attempts to escape liability by asserting Personnel Policy Immunity. However, the Defendant has the burden to establish that such immunity applies, which it has not done. Absent some showing that the doctrine applies, the Defendant is not entitled to such a defense.

Further, this assertion ignores the independent duty to protect students as discussed above.

### D. Respondeat Superior

### 5. Intentional Infliction of Emotional Distress

The Plaintiff's concede to the dismissal of this claim.

### 6. Negligent Supervision

Plaintiff incorporates the arguments made in Section 2 above regarding negligent supervision. However, this portion of the Motion should be denied without further consideration as it seeks to have dismissed a claim for negligent infliction of emotional distress, which is not the nature the Plaintiff's claim.

WHEREFORE, for the above and foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgment.

SUBMITTED BY:

/s/ Jeffery A. Sutton
Jeffery A. Sutton                    #14186
SUTTON LAW OFFICE, LLC
1106 No. 155th Street
Basehor, Kansas 66007
(913) 724-3003
(913) 724-3005 – Fax
jefferys@jefferysuttonlaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 13th day of November, 2014, a copy of this Response was served via electronic mail and U.S. Mail, postage prepaid to:

Alan Rupe and Jessica L. Skladzien of Kutak Rock LLP
1605 North Waterfront Parkway, Suite 150
Wichita, KS 67206
Alan.Rupe@KutakRock.com, Jessica.Skladzien@kutakrock.com
*ATTORNEYS FOR DEFENDANT*
*JOHN PRETZ*

Michael K. Seck
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas 66210 mseck@fisherpatterson.com
*ATTORNEYS FOR DEFENDANT*
*LANSING UNIFIED SCHOOL DISTRICT NO. 469*

Jennifer Terkleson